**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
September 28, 2012

Lyle W. Cayce
Clerk

No. 11-41197
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ISRAEL AVILA,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:11-CR-398-1

Before DeMOSS, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

Israel Avila was convicted by a jury of conspiracy to possess with intent to distribute 501.6 kilograms of marijuana, possession with intent to distribute 501.6 kilograms of marijuana, and being a felon in possession of a firearm. Avila was sentenced to 70 months of imprisonment and four years of supervised release. He appeals his convictions for possession with intent to distribute and conspiracy to possess with intent to distribute, arguing that there was insufficient evidence for the jury to convict him.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-41197

## FACTS

On March 2, 2011, Border Patrol agents encountered evidence that 15 to 20 individuals had smuggled drugs across the Rio Grande River to a nearby levee the previous night. The next morning, March 3, the DEA received information that a property close to the river contained a manmade bunker with marijuana in it. The DEA's investigation led agents to 720 East Doffin Road in San Juan, Texas, a five-acre property located approximately one-half to three-quarters of a mile from the river. The property, which is surrounded by a chain-link and barbed-wire fence, abuts Doffin Canal Road to the south, which runs alongside the waterway levee.

At around 11:30 a.m., DEA agents entered the property through an open gate on the north side and encountered Avila and three other men in the process of removing the gas tank from a Dodge Durrango. Avila later testified that he met these three men for first time earlier that day at a convenience store and that they had agreed to come to his property to help him take the gas tank off his truck. The agents asked Avila if the property was his and he stated that it was, explaining that his mother was the owner of the property but that they both lived on it. The agents told Avila that they were interested in looking for drugs or weapons on the property. Avila initially stated that there were none on the property, but gave the agents verbal and written consent to search the property. Before the agents began searching the property, Avila repeatedly looked at the three men who had been working on the Durrango with him and appeared to be concerned by their presence. A DEA agent asked Avila to move out of the field of vision of the other three individuals so that they could no longer observe him. Shortly thereafter, Avila admitted that the agents could find drugs in the chicken coops located on the property.

The chicken coops were surrounded by a fence and a locked gate. An agent asked Avila if he knew that the fence was locked and Avila replied that he did and removed the key to the gate from his pocket and gave it to the agent. Agents

2

then entered the gate and searched a house in front of the chicken coops. In the house, they found an interior door with a padlock on it and opened the lock with the key that Avila had given them. Inside the house, agents found a green trash can containing approximately 10 kilograms of marijuana. Surrounding the trash can was a pile of cellophane-type packaging material and opened burlap sacks. The house also had a bunker cut into the floor leading to the underside of the house and concealed by dirt and gravel. Agents searched the chicken coops behind the house and found 28 bundles of marijuana weighing 517 kilograms. The bundles were packaged in the same type of burlap sacks found in the house in front of the chicken coops.

Agents also searched a second house on the property. In a refrigerator in the second house, agents found a bundle of marijuana weighing 0.6 kilograms wrapped in aluminum foil. Avila told agents that this marijuana was for his personal use. Agents found a handgun and rifle in a third house on the property that Avila admitted belonged to him.

Avila's defense at trial was that the marijuana found in the chicken coops and adjoining house did not belong to him, but rather was being stored on the property by drug traffickers without his permission. He testified that he had placed locks on the gate surrounding the chicken coops and on the interior door of the adjoining house to "stop things going in there." He admitted that he had known about the marijuana on his property for several days before the search, but stated that he feared that if he called the police "something [was] going to happen to [him] or [his] mom."

## DISCUSSION

Avila argues that the Government did not produce sufficient evidence to support his conviction for conspiracy with intent to distribute because there was no evidence that a conspiracy existed between him and the three other men on his property or that he had voluntarily participated in it. He contends that his

mere presence with these three men is insufficient to prove beyond a reasonable doubt that they had an agreement to distribute marijuana.

Although Avila moved for a judgment of acquittal after the Government rested its case, he failed to renew the motion at the close of all evidence. Avila argues that he preserved this issue for review by making a motion for acquittal at the close of the Government's case. As the Government correctly argues, however, Avila's sufficiency claim is reviewed for "a manifest miscarriage of justice," which is found only if the record is "devoid of evidence pointing to guilt." *United States v. Miller*, 576 F.3d 528, 529-30 (5th Cir. 2009) (internal quotation marks and citation omitted).

The record is not devoid of evidence that Avila entered into an agreement with unknown conspirators and authorized the use of his property as a storage location for a load of marijuana. *See United States v. Perez-Cruz*, 93 F. App'x 672, 673 (5th Cir. 2004) (holding that evidence was sufficient for jury to infer that Perez knowingly participated in a drug-trafficking conspiracy where evidence showed that house was being used to store marijuana and Perez had access to the residence as shown by his knowledge of the combination to the lock on the front gate and his ability to open it). The jury could have reasonably rejected Avila's explanation that three men whom he had just met at a convenience store and whose names he did not know came to help him take the gas tank off the Durango. *See United States v. Aguilar*, 503 F.3d 431, 435-36 (5th Cir. 2007) (noting the implausibility of defendant's trial testimony "that she did not know the last names of several friends to whom she had spoken on her cell phone the day she was arrested"). The jury could have reasonably found that the three men with Avila in the garage with the Durango were there to remove and transport the marijuana by vehicle to the intended destination. Avila's hesitancy to tell the agents about the marijuana in the chicken coops until he was out of sight of the three men supports a conclusion that Avila did not want his cooperation with the DEA to be known to them. Avila presented

his explanation of the facts: that some unknown drug smugglers had left the marijuana on his property and that he did not want to do anything about it out of fear for his mother's safety. The jury rejected that explanation. The record is not devoid of evidence supporting the jury's verdict of guilty on the conspiracy offense.

Avila also argues that the evidence was insufficient to show that he knowingly possessed marijuana with intent to distribute it or aided and abetted possession of the marijuana with intent to distribute it. He contends that although he was aware of the presence of the marijuana on his property, he did not and could not exercise dominion and control over the marijuana because he feared retribution by Mexican drug smugglers.

Avila does not deny knowledge of the marijuana, but he argues that he did not possess it. Avila's possession of the keys to the lock on the gate in the fence surrounding the chicken coops gave him constructive possession of the marijuana, and his use of the keys to gain access gave him actual possession. *See United States v. Caballero*, 712 F.2d 126, 129-30 (5th Cir. 1983) (stating that possession of keys to van containing marijuana gave defendant dominion and control over marijuana, and use of keys to open van gave defendant actual possession). Even if it could be argued that Avila did not actually or constructively possess the marijuana, the evidence of his actions in allowing the marijuana to be stored on his property was sufficient to show that he aided and abetted the possession offense. *See United States v. Hall*, 240 F. App'x 655, 656 (5th Cir. 2007) (holding that evidence that defendant allowed her boyfriend to use her home as a stash house for drugs was sufficient for conspiracy and substantive offense). Accordingly, the record is not devoid of evidence of Avila's guilt.

AFFIRMED.